## Tracy O. Pierce, Appellee, v. Chicago & Alton Railroad Company, Appellant.

VERDICTS—*when set aside as against the evidence.* A verdict manifestly against the weight of the evidence will be set aside on review.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1911. Reversed. Opinion filed October 9, 1911.

PATTON & PATTON, for appellant; SILAS H. STRAWN, of counsel.

T. J. CONDON and ALBERT SALZENSTEIN, for appellee.

MR. JUSTICE FROST delivered the opinion of the court.

This is an appeal from a judgment entered in the Sangamon County Circuit Court in favor of Tracy O. Pierce, for $7500 damages, for personal injury sustained by him on account of the alleged negligence of appellant at a private crossing of appellant and its railroad tracks in the unincorporated village of Fancy Prairie, Menard county.    At Fancy Prairie appellant's depot is on the west side of its right of way, and about 800 feet north of the depot is a grain elevator,

the greater part of which is upon private property of
the elevator company, but having a projection out upon
the right of way of the appellant extending westwardly
into the right of way about 18 feet, and being in width
north and south about 40 feet.    At the depot there is
one track, being the main track, and the south end or
stub end of what is known as the business track which
is on the west side of the main track, and this business
track runs north for a considerable distance past the
elevator. About one-third of the right of way from the
depot to the elevator a short business track branches
out from the main track on the east side and runs up a
short distance past the elevator so that there are at the
elevator and on the right of way of the appellant, three
tracks, first, the business track on the easterly side of
the right of way; second, the main track about the cen-
ter of the right of way; and third, the business or pass-
ing track on the west side of the main track.    Near the
point where the elevator building projects into the
right of way there is a cross-over from the main track
to the west business or passing track, and the switch
points of this cross-over in the main track are prac-
tically due west of the southwest corner of the project-
ing portion of the elevator.    The road to the elevator
by which business goes to and from the elevator is
along a street running north and south, west of the
right of way of the appellant to a point about 600 feet
north of the depot, where a turn is made to the east,
and a private driveway comes from that street across
the right of way and tracks of the appellant to the
elevator property, and this crossing over the tracks
consists of planking sixteen feet wide, filled in with
cinders.    After crossing the tracks this driveway
turns to the north on the elevator property and makes
a loop around the elevator coming back to itself just
south of the elevator office.    This is the only method
by which teams or the public having business with the

elevator have any legitimate means of getting to and from the elevator.

John W. Pierce, the father of appellee, was the agent of appellant at Fancy Prairie, and he was also agent of the Western Union Telegraph Company. On December 10, 1906, about five o'clock in the evening, Mr. Pierce as agent for the telegraph company, received a telegram for Mr. Shaw, who was the manager of the Farmers' Elevator. About the time that the message was received, appellee, Tracy O. Pierce, who was then about eight years of age, came into the depot and his father gave him the message, and directed him to take it to Mr. Shaw at the elevator and to return if there was any answer, and the little boy started away with the message, and shortly after leaving the depot he met his older brother, Forrest Pierce, and another little boy, named Orrin Constant, and the boys proceeded on up the track upon the right of way of appellant toward the elevator. About this time appellant's south bound train arrived on the main track and stopped a little north of a switch situated a short distance west of the elevator and the brakeman got off the train and threw the switch to allow appellant's north bound train, then arriving, to enter the passing track west of the main track. After appellee had delivered his message to the elevator he joined the other boys and they engaged for a few minutes in playing with the brakeman and throwing kernels of corn at each other and then appellee started south to the depot.

Appellee, Tracy O. Pierce, claimed that when he started south to the depot he went around the road back to the crossing, when the brakeman, in trying to get on the engine, on its east side at the crossing, ran against him and knocked him under the engine and one of his legs was injured so that amputation was necessary.

On the part of appellant, it is claimed that the brakeman was not at any time near the crossing where appellee was injured; that the brakeman boarded the engine on its west side at a point over one hundred feet north of the crossing; that appellee was a trespasser upon appellant's right of way, and was injured through his own negligence, in attempting, as appellant believes to "flip" appellant's south bound train as it passed him, at some point other than the crossing.

The proof to substantiate appellee's case, rests wholly upon his testimony and that of his brother, Forrest Pierce, who was fourteen years of age at the time of the accident. The case has been tried twice. The first trial resulted in a disagreement of the jury. It is claimed by appellant that the testimony of appellee and his brother is different than that given by them at the first trial and that the direct testimony of both on this trial differs materially from that given by them on cross-examination, and for these reasons the testimony of both is unreliable and unworthy of credence. Appellee testified on this trial: "When I started back to the depot I went around the road back to the crossing. I had just left the crossing going back to the depot, and the train was going south slowly, for it had just started out. The brakeman was trying to get on the engine, when he pushed against me and knocked me under the engine." On his cross-examination he states: "When I started I left the brakeman there at the switch and the boys throwing corn and I walked south towards the crossing. I was walking on the outside of the business track (referring to the east business track); I walked along east of the business track but I wasn't close to the end of the ties. I don't think I was on the right of way. I don't believe I was walking on the cinders alongside the east side of the business track." His cross-examination on the

last trial showed a singular want of recollection of his testimony given on the first trial with reference to the course he took in walking south from the switch. The cross-examination of Forrest Pierce developed the fact that he was uncertain as to the testimony given by him on the former trial with reference to the course his brother took in going south, after leaving the brakeman at the switch.

We have examined the testimony of appellee and his brother Forrest carefully and are fully convinced that it is not sufficiently dependable to sustain this verdict as against the testimony adduced by appellant. The statement of the engineer, Muhl, which was received in evidence by stipulation, shows that the brakeman, Radford, remained at the switch until after the north bound train passed; that he then threw the switch and came back and got upon the engine upon its west side and that he, Muhl, first knew of the accident from a message to the conductor received at Sherman, Illinois. Radford, the brakeman, who, at the time of the last trial, was not in the employ of appellant, testified that he did not at any time walk or run south of the switch; that after he threw the switch, he walked across the track west and gave the starting signal to the engineer and got upon the engine on its west side, and that he did not run into appellee as claimed, and that the first he knew of the accident was at Sherman, Illinois, and that he learned it from the conductor. Harry Rhea, an assistant traveling engineer, who was on the engine, testified that when Radford gave the signal to proceed, Radford was standing opposite to the switch lever on the west side of the main track, between that track and the switch track, and that after giving the signal, Radford did not go over east of the main track; that upon receiving Radford's signal, Muhl, the engineer, started the engine, and that as it passed Radford, he got on the engine on the west side

of the main track and did not get off again.

The testimony of these witnesses is perfectly consistent with the usual method of doing the work required, and is in all respects natural and probable. It is not probable that a brakeman would give a starting signal to his engineer from a side opposite to the one occupied by the engineer, and allow the train to go past him for one hundred feet and then run to get on the engine. It is also extremely improbable that appellee should have been pushed under the engine and no one on the engine know of the accident at the time.

We are of the opinion that the verdict in this case is against the weight of the evidence as to the negligence charged against the defendant. In our view of the case it does not seem necessary to decide whether appellee was a trespasser upon appellant's right of way or not.

We find in this case that the evidence establishes the fact that appellant was not guilty of the negligence charged in the declaration and for this reason the judgment will be reversed.

*Reversed.*

Finding of fact to be incorporated in the record: We find as a matter of fact that the defendant was not guilty of any act of negligence charged against it in plaintiff's declaration.